UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
*Alexandria Division*

| | |
|---|---|
| MICHELLE MILLER<br>32650 State Route 20<br>Suite B-102, PMB 266<br>Oak Harbor, WA 98277-2641<br><br>*Plaintiff,*<br><br>v.<br><br>SOS INTERNATIONAL, LLC<br>1881 Campus Commons Drive, Suite 500<br>Reston, Virginia 20191,<br><br>*Defendant.* | Case No.: |

## COMPLAINT

1. Plaintiff Michelle Miller brings this complaint for monetary and equitable relief, through counsel, against Defendant SOS International, LLC (SOSI), for Wrongful Discharge, and Breach of Contract under the Common Law of the Commonwealth of Virginia.

## JURISDICTION & VENUE

2. This Court has jurisdiction over this action pursuant 28 U.S.C. § 1332 (Diversity of Citizenship).

3. This Court is the proper venue under 28 U.S.C. § 1391 as the defendant corporation is a resident of the Commonwealth of Virginia with its principle place of business in Reston, Virginia.

## PARTIES

4. Ms. Miller is a resident of Oak Harbor, Washington and a licensed Physician Assistant.

5. SOSI is a Delaware Limited Liability Company with its principal place of business in Reston, Virginia.

## FACTS

6. SOSI hired Ms. Miller as an employee physician assistant to perform medical services in Taji, Iraq pursuant to a contract between SOSI and the United States Government.

7. Ms. Miller received an Offer Letter (Exhibit A) and Restrictive Covenant Agreement (Exhibit B) from SOSI offering her employment on August 26, 2016.

8. On August 29, 2016, Ms. Miller returned the signed Offer Letter and Restrictive Covenant Agreement.

9. Pursuant to the Offer Letter, Ms. Miller's employment with SOSI was governed by the laws of the Commonwealth of Virginia.

10. SOSI promised to pay Ms. Miller annual compensation of $150,000 per year.

11. Ms. Miller flew to Virginia on August 27, 2016 to begin employment orientation with SOSI the next day.

12. On or about October 28, 2016, Ms. Miller began working for SOSI in Camp Taji, Iraq.

13. SOSI did not pay Ms. Miller an amount that would equal $150,000 for the year.

14. SOSI also did not pay Ms. Miller's colleagues in Camp Taji amounts that would equal the yearly compensation promised in their respective offer letters.

15. On January 6, 2017 Ms. Miller, along with several other coworkers, notified Thomas Berger, SOSI's Manager of Medical Services in Iraq, that she believed she and her coworkers were being underpaid according to their contracts.

16. Mr. Berger responded to the email by forwarding an email he received from Phyllis Anderson, Manager of SOSI Human Resources (HR) dated February 14, 2017.

17. On February 17, 2017, Ms. Miller and her coworkers collectively composed a letter requesting to be paid according to their respective agreements and sent it by email to Ms. Anderson (Exhibit C).

18. On February 24, 2017, Ms. Anderson responded to the email by offering Ms. Miller $953.51 as a one-time payment to make up for any shortfall in compensation.

19. Ms. Miller responded to Ms. Anderson, claiming that she was actually owed a sum of $17,778 for then-unpaid wages.

20. SOSI never made any payment to Ms. Miller to make up for the shortfall in compensation.

21. Ms. Anderson also sent a memorandum on February 24, 2017 giving Ms. Miller a new hourly rate of $37.1062, and which she claimed would equal the annual compensation of $150,000 (Exhibit D).

22. On March 10, 2017 Ms. Miller sent an email to Thomas Berger advising him that current pay statements still were not reflecting the new hourly rate referenced in Ms. Anderson's February 24, 2017 memorandum.

23. On or about March 10, 2017, one of Ms. Miller's coworkers, Lauren Kelly, EMT resigned from SOSI effective March 24, 2017 due to her pay dispute with the company.

24. During her work for SOSI at Camp Taji, Ms. Miller's job performance was satisfactory or better.

25. Ms. Miller was never counseled or disciplined for poor job performance by anyone from SOSI.

26. Ms. Miller met all of her performance obligations to SOSI.

27. No one from SOSI ever expressed any concern or allegation to Ms. Miller that she was not meeting all of her performance obligations.

28. Prior to asserting her claims, no one from SOSI ever criticized her job performance, or bed-side manner.

29. Prior to asserting her claims, no one from SOSI ever criticized her for her interactions with coworkers or patients.

30. Prior to asserting her claims, no one who had served at Camp Taji had criticized Ms. Miller to her face for her interactions with coworkers nor for her interactions with patients.

31. On March 16, 2017 Ms. Miller left Camp Taji on a scheduled Rest and Relaxation trip.

32. On March 30, 2017, SOSI terminated Ms. Miller's employment by email from Ms. Anderson and without citing a reason for the dismissal.

33. Later, on March 30, 2017, Ms. Anderson told Ms. Miller on the phone that the reason for the termination was "it's just time."

34. On March 30, 2017, the on-going pay dispute had still not been resolved.

35. Save for the ongoing issue of her and her colleagues' unpaid wages, Ms. Miller was unaware of any dispute or concern that might have led to her dismissal, and SOSI declined to provide one.

36. SOSI did not provide a reason for the termination until more than a year after the termination when Ms. Miller asserted her claims against SOSI.

37. SOSI did not raise any concerns to Ms. Miller about her bedside manner until more than a year after her termination.

38. SOSI did not raise any concerns to Ms. Miller about her interactions with coworkers until more than a year after her termination.

39. SOSI now claims that it terminated Ms. Miller because of her poor bedside manner and rude interactions with coworkers.

40. Additionally, Ms. Miller's only interactions with Ms. Anderson were related to the issue of SOSI's failure to pay her and her colleagues as agreed.

41. As of the date of the filing of this Complaint, SOSI has not paid Ms. Miller any of the disputed money.

## COUNT I
*Bowman Claim: Wrongful Discharge*

42. Ms. Miller re-alleges every preceding paragraph.

43. SOSI terminated Ms. Miller's employment because she demanded the wages that she was owed.

44. Ms. Miller was entitled to demand payment for wages she was owed by Va. Code § 40.1-29.

45. SOSI's election to dismiss Ms. Miller because she complained about SOSI's failure to pay Ms. Miller according to her Offer Letter was in violation of the public policy of the Commonwealth of Virginia and constitutes a common law Wrongful Termination.

46. Ms. Miller has lost more than $100,000 in lost wages because of the Wrongful Termination.

## COUNT II
### *Breach of Contract*

47. Ms. Miller re-alleges every preceding paragraph.

48. SOSI and Ms. Miller were parties to a contract for employment, the terms of which are memorialized in the Offer Letter (Exhibit A).

49. SOSI breached that employment contract by failing to pay her the wages that it had promised to pay here in the Offer Letter.

## RELIEF DEMANDED

Wherefore, Plaintiff Michelle Miller, respectfully requests that the Court grant her the following relief:

A. Compensatory damages in an amount to be proven at trial but exceeding $75,001 dollars;

B. Punitive Damages in an amount to be proven at trial;

C. Injunctive relief to the extent it is necessary to make Ms. Miller whole and to prevent future retaliation by SOSI against Ms. Miller;

D. Pre-judgment and post-judgment interest; and

E. Such other relief as the Court deems just and proper.

**Ms. Miller DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated: January 23, 2019

Respectfully Submitted,

/s/
Benjamin R. Inman
(VSB # 84006)
Attorney for Michelle Miller
J. Madison PLC
1750 Tysons Blvd.
Suite 1500
McLean, Virginia 22102
P (703) 910-5062
F (703) 910-5107
binman@jmadisonplc.com